

# THE ATTORNEY GENERAL

## OF TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. S. M. Pliler
County Auditor
Taylor County
Abilene, Texas

Opinion No. O-6333
Re: Who is liable for the additional
tuition fee of the children transferred
from the Abilene State Hospital Inde-
pendent School District to the City
of Abilene Independent School District?
And a related question.

Dear Sir:

        We have your opinion request which is stated in
your letter as follows:

        "*** An independent school district has, pursu-
and to law, been created and is now in existence in
the Abilene State Hospital Area. The bounds of the
independent school district so created are co-extensive
with the bounds of the Abilene State Hospital. The
Abilene State Hospital is located approximately two
miles southeast of the City of Abilene. There are
about 200 inmates of this institution who attend this
school. All of the inmates attending the school are
afflicted to the extent that they are now in the hospi-
tal. There are a number of adult employees who live
in the hospital area, and also in the independent
school area. These adult employees have a number of
children who are of scholastic age. These children
are normal children, and are not inmates of the institu-
tion. The school which is operated and maintained in
the above mentioned independent school district at the
Abilene State Hospital does not have a normal curricu-
lum, or course of study, but is mostly handicraft
teaching. Therefore, the normal children cannot at-
tend the school so conducted in the Abilene State
Hospital independent school district. Therefore, they
are being transferred by the County Superintendent to
the Abilene Independent School District maintained
within the City of Abilene, Texas. The Abilene State
Hospital independent school is maintained and operated
by the State money of $25.00 per capita, and no other
funds have been given this particular independent
school district. The $25.00 per capita apportionment
is, of course, transferred with each student transfer-
ring to the Abilene Independent School District in the

City of Abilene, but this amount is insufficient to carry the child, or children, through a nine-months school, but only carries him, or them, for a period of four months. The Abilene city independent school district charges a tuition fee as provided by law in the following amount: $5.00 per month per child for transfers such as the above children, in the elementary grades; and $6.50 per month in the junior high school grades; and $7.50 per month in the senior high school.

"Now, the question he desires to have answered is: Who is liable for the additional tuition fee of the children transferred from the Abilene State Hospital independent school district to the City of Abilene independent school district; and also should this additional tuition, or could the additional tuition, be paid from the Equalization Fund, as provided in House Bill Number 176, Chapter 373, of the Forty-eighth Legislature, and which bill was passed and finally approved on May 27, 1943. ***"

The additional tuition cannot be paid from the Equalization Fund as provided in House Bill Number 176, Chapter 373, 48th Legislature for the reason that the Abilene Independent School District is ineligible to receive State aid, by reason of the fact that it has more than 500 scholastics. Section 1 of Article 1 of that Act provides that only those districts which had not fewer than 20 nor more than 500 original enumerated scholastics were eligible for aid, with three certain exceptions, none of which are applicable to the Abilene Independent School District. We are sure that the Abilene Independent School District has a scholastic population of more than 500.

In Slocomb v. Cameron Independent School District, 116 Tex. 288, 288 S. W. 1064, certain scholastics were duly transferred from other school districts of the county to the Cameron Independent School District. The Board of School Trustees of the Cameron Independent School District entered an order requiring these pupils to pay tuition at the rate of $50.00 per year for high school students and $32.00 for students in grades below the high school, less transfer money received. The father of these pupils refused to pay the tuition and instituted an action to restrain the school board from attempting to collect the amounts alleged to be due. The Court held that the Independent School District could charge tuition to non-resident scholastics under Article 2760 of the Revised Civil Statutes of 1911, (which Article is almost identical with Article 2696, Vernon's Annotated Civil Statutes) and in the course of its opinion said:

"It is our view that the Legislature, in
enacting this article, did not intend to require any
independent district in this state to educate a schol-
astic free of charge any longer than the funds trans-
ferred with such scholastic would pay such pupil's
proportionate part of the expense of operating the
schools of such district. In other words, as long
as the state apportionment will operate the schools
of the independent district, the transfer pupil, whose
state apportionment is also transferred, is not required
to pay tuition. But, when the schools of the independ-
ent district must continue their term with money
raised by local taxes levied upon the property within
such district, then the transfer pupil, a non-resident
of such district, must pay a reasonable tuition."

For cases in accord see Huck v. Public Free Schools
of the City of Austin, 290 S. W. 1118; Muse v. McKinney Inde-
pendent School District, 35 S. W. (2d) 780. These cases were
under Article 2696 of Revised Civil Statutes of 1925. See
also the case of Love v. City of Dallas, 40 S.W. (2d) 20, de-
cided by the Supreme Court of this State on May 16, 1931,
wherein the Court pointed out:

"For more than fifty years statutes have been
in effect permitting transfers from one school dis-
trict to another, and some consideration must be given
to the construction of the Constitution which the en-
actment of these statutes implies. Since the Constitu-
tion does not permit the taxation of the people of a
school district for the support of that district, ex-
cept upon a vote of the people of the district, it is
not debatable that the Legislature cannot compel one
district to use its funds and properties for the edu-
cation of scholastics from another district, without
just compensation. However, in view of the long oper-
ation of the transfer statutes, we believe that where
a school district has facilities and teachers in ex-
cess of those necessary for its own scholastics, the
state has the power to require it to accept transfers
from another district, but only upon the payment of
reasonable compensation therefor. ***"

It, therefore, is apparent that under the authority
of Slocomb v. Cameron Independent School District, and Love v.
City of Dallas, supra, a receiving independent school district
has the right to collect a reasonable tuition from non-resident
scholastics sufficient to compensate the receiving district for

the education of transferred scholastics, when the trans-
ferred funds received are not sufficient.

.

The pupils or their parents or guardians are
liable for this tuition.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ C. F. Gibson
C. F. Gibson, Assistant

APPROVED: MAY 12, 1945
/s/ Carlos C. Ashley
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:       GWB, CHAIRMAN

CFG:EP:wb